# Gerard Giroux v. Antonio Lussier

[ 253 A.2d 151 ]

February Term, 1969

Present: Holden, C.J., Shangraw, Barney, Keyser, JJ., and Daley, C. Supr. J.

Opinion Filed April 1, 1969

*Lee E. Emerson, Esq.,* for the Plaintiff.

*Davis, Martin & Free* for the Defendant.

**Shangraw, J.** This is the second time this case has been before this Court. It dakes back to events occurring in May, 1966. Both parties to this controversy are real estate brokers. The gist of the action is that the defendant wrongfully interfered with plaintiff's brokerage contract dated May 18, 1966, which he had with Mr. and Mrs. Rondeau, the owners and sellers of a farm in Newport, Vermont.

The first jury trial held in January, 1967 resulted in a directed verdict for the defendant at the conclusion of plaintiff's case. Plaintiff appealed and obtained a reversal in this Court. *Giroux* v. *Lussier,* 126 Vt. 555, 238 A.2d 63. This second trial resulted in a jury verdict in favor of the plaintiff to recover damages of $1,562.50.

This was followed by defendant's motion for judgment notwithstanding the verdict, and one to set aside the verdict and for a new trial. Each motion was denied. Judgment was entered on the verdict. The defendant has seasonably appealed to this Court for review.

On May 19, 1966, plaintiff went to the Roland DeLabruere auction for the purpose of trying to sell the Rondeau farm to Roger Lussier. When he arrived, Roger, who was the auctioneer, was busy. Recognizing the defendant, Antonio Lussier, plaintiff struck up a conversation with him, during which he told defendant about the Rondeau farm. He then asked the defendant to have Roger contact him, if the latter was interested in purchasing this farm, which defendant agreed to do. Sometime later that afternoon, plaintiff and the defendant had a further conversation wherein defendant told the plaintiff that he was also a real estate broker, and knew a person in Stowe who had sold his property to a doctor who might be interested in the Rondeau farm. It was agreed that if a sale was made, plaintiff and the defendant would split the commission.

In January, 1961 the defendant and Noel Lussier joined in the formation of a corporation, known as A. Lussier & Sons, Inc., for the purpose of dealing in real estate, cattle and farm machinery. Later, that year Noel registered under the provisions of 11 V.S.A. §1621

522

as doing business as a cattle dealer with defendant. The sign displayed at the farm where the Lussiers conducted their business, was marked —"A. Lussier and Sons,—Cattle & Real Estate." Noel and Roger were sons of the defendant.

Plaintiff's evidence in this case is substantially the same as that introduced during the first trial and on appeal recited in the opinion of this Court. *Giroux* v. *Lussier, supra*. While defendant's evidence in this second trial is, to some extent, at variance with that of the plaintiff on the issue of liability, it rightfully became the jury's province to resolve such evidentiary conflicts. On appeal this evidence must be considered in the light most favorable to the plaintiff without regard to modifying evidence. *Berry* v. *Whitney and Whitney,* 125 Vt. 383, 385, 217 A.2d 41.

Defendant frequently attended auctions conducted by his son Roger. On May 24th or 25th, Roger and Ernest E. Goodwin called on Mr. and Mrs. Rondeau, agreed to purchase their farm, and made a down payment of $2,500.00. On June 7, 1966, the Rondeaus conveyed their property to Roger Lussier and Noel Lussier by a Warranty Deed. The agreed price, with certain personal property, was $62,500.00.

Defendant denied having told his sons about plaintiff's brokerage contract with the Rondeaus, and claims no unlawful interference therewith.

The conversation between the plaintiff and the defendant at the DeLabruere auction took place on May 19, 1966. Mr. and Mrs. Rondeau were contacted by Roger and Goodwin within one week. At that time Mr. Rondeau indicated to them that the property had been placed in a real estate broker's hands for sale. Upon being shown plaintiff's brokerage contract Mr. Rondeau was told by Goodwin that the contract was merely an "open listing" and that he was at liberty to sell the farm.

From all the facts, circumstances, business and family relationship of the defendant and his sons, the jury could have reasonably found that the defendant informed Roger about plaintiff's brokerage contract. This information afforded Roger the opportunity to deal directly with the Rondeaus and obtain a reduction in price of their farm at the expense of the plaintiff's commission. These, and subsequent events, justified the inference that the defendant wrongfully interfered with plaintiff's contract.

As stated in *Giroux* v. *Lussier, supra,* 126 Vt. at pages 561 and 562, 238 A.2d at page 67, "There is no legal right to deceptively invade the area of another's agreement. An outsider who does so for his own purposes may be held liable to the promisee who suffers from such intervention." Citing, *Mitchell* v. *Aldrich,* 122 Vt. 19, 22, 163 A.2d 833; *St. Johnsbury & Lake Champlain R. R. Co.* v. *Hunt,* 55 Vt. 570, 574; Harper and James, Law of Torts, §6.9.

■ The evidence is such that the jury could have reasonably inferred and found that the conversation had beetween plaintiff and the defendant at the DeLabruere auction stimulated the interest which produced the purchase by Roger and Noel of the Rondeau farm.

■ The law protects man's interest in reasonable expectations of economic advantage. One who unjustifiably interferes with the contract of another is guilty of a wrong and must pay for that mischief. *Harris* v. *Perl,* 41 N.J. 455, 197 A.2d 359, 363, 364.

From a reading of the transcript we are convinced that the jury settled the issue of liability fairly and upon sufficient evidence.

The property in question was sold for $62,500.00. Plaintiff's brokerage contract provided for a commission of five percent, amounting to $3,125.00. Plaintiff's verdict was for one-half of this amount, namely $1,562.50.

Defendant assails the verdict on the ground that it represents a compromise, and prejudice or sympathy on the part of the jury, and that the trial court should have set aside the verdict and ordered a new trial. He claims that if the plaintiff was entitled to recover it should have been for the sum of $3,125.00, or a verdict in favor of the defendant.

In his brief defendant calls attention to the following portion of the court's charge:

"The plaintiff, if he is entitled to recover, and you so find, is entitled to recover the sum of $3,125; and since this is tort action, as it is called, you may, also, consider he may recover an amount, which is not interest, but is computed as interest; and this may be included in your sum. * * *"

To this portion of the charge neither party took exception. The court continued by commenting on the credibility of the witnesses and the weight to be given their testimony.

524

■ In challenging the amount of the verdict, it is contended by the defendant that a verdict may be set aside *in toto* if found to be excessive or inadequate. Our case law permits such action, as a matter of sound discretion, on motion of a plaintiff where the damages are deemed to be inadequate. *Parizo* v. *Wilson,* 101 Vt. 514, 518, 519, 144 A. 856; *Farr* v. *Fisher,* 107 Vt. 331, 334, 178 A. 883, 98 A.L.R. 926.

■ Likewise, on motion by a defendant such relief is also granted in cases where a verdict is considered excessive. *Smith* v. *Martin,* 93 Vt. 111, 106 A. 666. *Woodhouse* v. *Woodhouse,* 99 Vt. 91, 130 A. 758.

■ If the court's charge was lacking because it failed to comment on the evidence concerning the splitting of commissions, we consider such omission harmless, because the verdict corrected this deficiency. *Burnell* v. *Maloney,* 39 Vt. 579, 584.

■ Furthermore, this evidence, being properly in the case, was available for the jury's use. We are required to make all presumptions in favor of the verdict. The presence of this evidence is sufficient to adequately account for the money damages arrived at. Taken in that light it is not evidence suggestive of a compromise as claimed by the defendant.

■ In an action for interference with the business relations of another, the plaintiff may recover such damages sustained by him as are a natural and proximate consequence of the interference. 30 Am. Jur. Interference, §60, p. 95. This includes such loss as the plaintiff can prove to have resulted directly and proximately from the defendant's wrongful acts. *Watts Co.* v. *American Bond & Mortg. Co.,* 267 Mass. 541, 166 N.E. 713, 84 A.L.R. 12.

Considering the latitude thus afforded the jury on the issue of damage, we are convinced that the jury's verdict should not be disturbed. It is founded on valid evidence. The record fails to reveal that the verdict was prompted by compromise, prejudice or sympathy.

*Judgment affirmed.*